THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JANICE GILMORE, | : | HON. JEROME B. SIMANDLE |
| Plaintiff, | : | Civil No. 06-3020 (JBS) |
| v. | : | |
| | : | **OPINION** |
| FEDERATED DEPARTMENT STORES, INC., et al., | : | |
| Defendants. | : | |

APPEARANCES:

Keith T. Smith, Esq.
Ridgewood Plaza
2327 New Road
Suite 202
Northfield, NJ 08234
     Attorney for Plaintiff

William T. Reilly, Esq.
Allison G. Greenberg, Esq.
MCCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102-4096
     Attorneys for Defendant

**SIMANDLE**, District Judge:

Plaintiff, a longtime employee of a Macy's department store operated by Defendant Federated Department Stores, Inc. ("Federated"), filed this action, alleging that she had been discriminated against by her employer on account of her race. Defendant[1] has moved for summary judgment [Docket Item 24].  For

---

[1]  Plaintiff named as defendants Federated, Macy's East, and numerous John Doe individuals and corporations.  The Court refers only to Defendant Federated throughout this Opinion, because

the reasons explained below, the Court will grant Defendant's motion for summary judgment as to Plaintiff's claims for failure to promote, grant in part and deny in part Defendant's motion as to Plaintiff's claims for disparate treatment, and grant Defendant's motion as to Plaintiff's claims for punitive damages.

## I.   BACKGROUND

### A.   Facts

1.   <u>Plaintiff's Employment in the Macy's Fine Jewelry Department</u>

Plaintiff, an African American woman, was hired by the Macy's department store in Hamilton, New Jersey on November 6, 1989. (Compl. First Count ¶ 1; Gilmore Dep. 7-8.) Between 1989 and 2001, Plaintiff worked in multiple departments at Macy's, ranging from the Men's Basics Department to the Women's Shoes Department. (Gilmore Dep. 15-16.) Plaintiff was transferred to the Fine Jewelry Department in February 2001. (<u>Id.</u> at 16.)

The Fine Jewelry Department at Macy's is divided into three areas, or "bays," each of which contains a separate category of products: the Diamond Bay, the Gold Bay, and the Watch Bay. (<u>Id.</u>) Each associate in the Fine Jewelry Department is assigned to one of the three bays. (Van Aken Dep. 17.) Of the three bays, the Diamond Bay is considered to be the most desirable

Federated is the moving Defendant, Federated operates Macy's stores (including Defendant Macy's East), (Rutter Dep. 10), and because Plaintiff has not identified the specific John Doe defendants.

assignment by associates in the Fine Jewelry Department on account of the higher prices of the items sold in that bay.[2] (Compl. First Count ¶¶ 10-11.)  While the employees in the Jewelry Department have some opportunities to sell items outside of the bays to which they are assigned – such as when no personnel from a particular bay are available to assist a customer – the associates' primary sales responsibilities are for the items in their respective assigned bays.  (Van Aken Dep. 17.)

Since she was transferred to the Jewelry Department in 2001, Plaintiff has worked as an associate in the Gold Bay.  (Gilmore Dep. 89.)  Over the course of her employment, Plaintiff repeatedly expressed to Sherry McCord, the Sales Manager in the Fine Jewelry Department, that she was interested in being assigned to the Diamond Bay.  (Id. at 16, 37.)  In 2002, Plaintiff asked Ms. McCord what she needed to do in order to be able to be transferred to a position in the Diamond Bay, and Ms. McCord told Plaintiff to "show that [she] really wanted it" by attending to customers at the Diamond Bay whenever there were no Diamond Bay associates available.  (Id. at 37.)  When Plaintiff informed Ms. McCord that other associates in the Jewelry Department "automatically went to the Diamond Wall" when there were no Diamond Bay associates to assist customers, Ms. McCord

---

[2]  While Macy's employees in the Fine Jewelry Department are paid by the hour, they can receive a bonus for selling goods in excess of their target sales goals.  (Van Aken Dep. 18-19.)

effectively advised Plaintiff to demonstrate her interest in working at the Diamond Bay by asserting herself as the most determined salesperson; Plaintiff was told to "elbow [her] way" into the Diamond Bay.  (Id. at 37-38.)  In 2003, Plaintiff again informed Ms. McCord that she wanted to become a Diamond Bay associate and stated that Ms. McCord's recommendation of "elbow[ing her] way" into the position was not working.  (Id. at 44.)  Ms. McCord told Plaintiff that if Bonnie DeFrancesco, an elderly Diamond Bay associate, ever retired, Plaintiff would be able to work in the Diamond Bay.  (Id.)

            2.    The October 2004 Transfer and Jeannette Rutter's
                  Qualifications

    In August 2004, Ms. DeFrancesco passed away.  (McCord Aff. ¶ 12.)  In October 2004, Ms. McCord and Jacquie Ashbook, the store manager, made the decision to transfer Jeanette Rutter, a Caucasian employee in the Jewelry Department, to the Diamond Bay to fill Ms. DeFrancesco's position.  (Id. at ¶ 13; Gilmore Dep. 45.)

    Macy's originally hired Ms. Rutter in 1987 to work in the Diamond Bay.  (Rutter Dep. 9.)  Prior to working at Macy's, Ms. Rutter worked at a jewelry store called Zales, where she took part in a "two-year training curriculum" in order to be certified to purchase and sell diamonds.  (Id.)  Ms. Rutter worked in the Diamond Bay at Macy's from the time she was hired until 2000.  (Id. at 10.)  On October 21, 2000, Ms. Rutter was working at the

4

Diamond Bay when four men stole eleven rings from one of the jewelry cases. (Pl.'s Opp'n Br. Ex. F.) Ms. Rutter was found not to be at fault for the lost inventory, (Rutter Dep. 11; McCord Aff. ¶ 9), but as an "administrative move," she was transferred to the Women's Department for a two-year period. (Rutter Dep. 11.) In 2002 or 2003, Ms. Rutter was transferred back to the Jewelry Department, but because there were no positions at the Diamond Bay available, she was not assigned to the Diamond Bay. (McCord Aff. ¶ 10.)

Plaintiff concedes that Ms. Rutter's "evaluations were better than [Plaintiff's]," (Gilmore Dep. 48), and does not dispute Defendant's evidence indicating Ms. Rutter's superior work performance in the Jewelry Department in the year preceding the Diamond Bay transfer. Plaintiff's "review rating" in her 2004 Compensation Merit Detail Sheet was "ME" (or "meets expectations"), whereas Ms. Rutter's rating was "EE" (or "exceeds expectations"). (Van Aken Dec. Exs. 1-2.) In the first three quarters of 2004, Ms. Rutter's sales figures were substantially higher than Plaintiff's. (Van Aken Dec. Exs. 3-8.) In her deposition testimony, Plaintiff appears to attribute this disparity in sales figures to the fact that white employees like Ms. Rutter were called upon to fill in for absent Diamond Bay associates more frequently than were black employees, which

inflated Ms. Rutter's sales due to the higher prices of the Diamond Bay merchandise.  (Gilmore Dep. 69.)

        3.   Evidence of Alleged Differential Treatment

In addition to the evidence the parties submitted relating to the transfer of Ms. Rutter to the Diamond Bay position, Plaintiff testified during her deposition about additional examples of allegedly inequitable treatment she experienced during her employment in the Fine Jewelry Department.[3]  One such instance of differential treatment, as the Court noted supra, is Plaintiff's testimony that her capacity to earn bonus pay was limited by the fact that "the Diamond associates [would] ask for the Caucasian associates that [were] not scheduled at the Diamond

----

[3]  More than three months after receiving a copy of her deposition transcript, and only two weeks before the dispositive motion deadline of June 15, 2007 in this case, Plaintiff submitted an errata sheet in an effort to change approximately 193 instances of testimony in her deposition.  See February 26, 2008 Order [Docket Item 39].  In her February 26, 2008 Order, Magistrate Judge Donio granted Defendant's motion to strike Plaintiff's errata sheet.  The Court does consider the contents of Plaintiff's stricken errata in deciding the instant motion.

    Plaintiff also submitted as evidence in opposition to Defendant's motion numerous handwritten pages of what Plaintiff's counsel states are Plaintiff's personal notes that she took over the course of her employment.  (Pl.'s Br. Ex. I.)  Plaintiff seeks to use these notes as evidence that the events referenced in the notes took place.  To the extent that Plaintiff relies on the notes "to prove the truth of the matter[s they] assert[]," Fed. R. Evid. 801(c), the Court agrees with Defendant that the notes are hearsay.  Because "hearsay statement[s] . . . not capable of being admissible at trial" cannot "be considered on a motion for summary judgment," the Court likewise does not consider the contents of Plaintiff's notes on this motion. Philbin v. Trans Union Corp., 101 F.3d 957, 961 n.1 (3d Cir. 1996) (internal quotations and citations omitted).

Wall to replace them in their absence," rather than calling upon replacement associates on a race-neutral basis.  (Id.)

Plaintiff also testified that she was called upon to do "maintenance tasks," such as counting and sizing watches, with greater frequency than her white coworkers.  (Id. at 89.) According to Plaintiff, performing such tasks reduced her sales performance because it took away from the time that she could have been selling jewelry to customers.  (Id.)  Of the Fine Jewelry Department associates, Plaintiff testified that she and Barbara Feldman "were probably equal" in their performance of maintenance tasks.  (Id.)  Ms. Feldman is white.  (Id.)

At her deposition, Plaintiff stated that unlike white employees, black employees in the Fine Jewelry Department were not given the combination to the alarm and the vault in the Diamond Bay.  (Id. at 90.)  While Plaintiff testified that she knew the combination to the vault and alarm, she stated that she did not receive the combination from her manager, but instead had to ask a coworker for the combination.  (Id. at 91.)  Plaintiff testified that she never asked her manager for the combination. (Id. at 93.)  Plaintiff also testified that Leslie El, an African American associate in the Fine Jewelry Department, had the combination to the alarm and vault.  (Id. at 94-95.)

Plaintiff also testified at her deposition that she was discriminated against because she was not able to become a

7

Counter Specialist within the Fine Jewelry Department.  (Id. at 107.)  According to Elaine Van Aken, the Vice President of Human Resources at Macy's, a Counter Specialist is "a lead associate, someone who has good selling skills and . . . who can help create a team environment and . . . be a leader in the department." (Van Aken Dep. 26.)  Plaintiff testified that there are two Counter Specialists in the Fine Jewelry Department – Jana Tinel-Bobb, who is white, and Leslie El, who is black.  (Gilmore Dep. 95, 107.)

### B.  Procedural History

Plaintiff filed a complaint with the United States Equal Employment Opportunities Commission ("EEOC") on July 7, 2005. (Gilmore Dep. 174-75.)  On February 23, 2006, the EEOC issued a Dismissal and Notice of Rights informing Plaintiff that the Commission was "unable to conclude" that Defendant had violated Title VII, and notifying her that she had a ninety-day period to file a lawsuit.  (Def.'s Br. Ex. F.)  On May 10, 2006, Plaintiff filed her Complaint in this action in New Jersey Superior Court, and Defendant removed the matter to this Court [Docket Item 1]. Defendant subsequently filed the motion for summary judgment presently before the Court, to which the Court now turns.

## II.  DISCUSSION

Plaintiff's Complaint alleges that she was discriminated against on the basis of her race, in violation of both Title VII

of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-2.1, et seq.  Specifically, Plaintiff alleges that Defendant's failure to promote her violated the NJLAD (Count One) and Title VII (Count Two), that Plaintiff was subjected to differential treatment on account of her race in violation of NJLAD and Title VII (Counts Three and Five), and that Plaintiff is entitled to punitive damages (Count Four).[4]  Defendant has moved for summary judgment as to all of Plaintiff's claims.

### A.   Standard of Review

Summary judgment is appropriate when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the non-moving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'"  Hunt v. Cromartie, 526 U.S. 541, 552, 119 S. Ct. 1545, 143 L. Ed. 2d 731 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

---

[4]  Count Six of the Complaint alleges that the John Doe defendants are vicariously liable for the injuries alleged in Counts One through Five.  Plaintiff has not identified these defendants beyond their fictitious designations.

255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).  The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Liberty Lobby, 477 U.S. at 250; Brewer v. Quaker State Oil Refining Corp., 72 F.3d 326, 329-30 (3d Cir. 1995) (citation omitted).

Although entitled to the benefit of all justifiable inferences from the evidence, the nonmoving party may not, in the face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings; rather, that party must set forth 'specific facts showing that there is a genuine issue for trial,' else summary judgment, 'if appropriate,' will be entered."  U.S. v. Premises Known as 717 South Woodward Street, Allentown, Pa., 2 F.3d 529, 533 (3d Cir. 1993) (quoting Fed. R. Civ. P. 56(e))(citations omitted).

"Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all

other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

### B.   Failure to Promote Claims

Plaintiff's Title VII and NJLAD claims that Defendant discriminated against her on the basis of her race when it promoted Ms. Rutter rather than Plaintiff to the Diamond Bay associate position are analyzed under the familiar burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and its progeny.[5]  Under that framework, a plaintiff must first prove a prima facie case of discrimination by establishing four factors: (1) that she is a member of a protected class; (2) that she applied and was qualified for a position for which the employer was seeking applications; (3) that she was rejected despite having adequate qualifications; and (4) that after she was rejected, the employer filled the position by selecting someone of lesser or equivalent qualifications who was not a member of the plaintiff's protected class.  See id. at 802.  "Establishment of the prima facie case gives rise to a presumption that the employer unlawfully discriminated against the applicant."  Johnson v. Penske Truck Leasing Co., 949 F.

---

[5]   Under the NJLAD, employment discrimination claims, including claims for discriminatory failure to promote, are analyzed under the same framework as federal Title VII claims. See, e.g., Grigoletti v. Ortho Pharmaceutical Corp., 118 N.J. 89, 97 (1990).

11

Supp. 1153, 1170 (D.N.J. 1996) (citing St. Mary's Honor Ctr. v.
Hicks, 509 U.S. 502, 506 (1993)).

> Once the plaintiff establishes . . . her prima facie
> case, the burden shifts to the defendant to articulate
> one or more legitimate, non-discriminatory reasons for
> its employment decision.  If one or more such reasons are
> proffered, the presumption of discrimination created by
> establishment of the prima facie case is dispelled, and
> the plaintiff must prove that the employer's proffered
> reason or reasons were pretextual – that is, that they
> are false and that the real reason for the employment
> decision was discriminatory.

Waldron v. SL Industries, Inc., 56 F.3d 491, 494 (3d Cir. 1995).

As the preceding discussion indicates, "[u]nder the
McDonnell Douglas approach, the burden of persuasion remains on
the plaintiff, but the burden of going forward shifts." Johnson,
949 F. Supp. at 1170.  In the third stage of the analysis, if the
employer has erased the presumption of discrimination by putting
forth a non-discriminatory explanation for its action, the
plaintiff "may defeat a motion for summary judgment by either (i)
discrediting the proffered reasons, either circumstantially or
directly, or (ii) adducing evidence, whether circumstantial or
direct, that discrimination was more likely than not a motivating
or determinative cause of the adverse employment action."
Waldron, 56 F.3d at 495 (quoting Fuentes v. Perskie, 32 F.3d 759,
764 (3d Cir. 1994)).  To survive a summary judgment motion, "the
plaintiff's evidence rebutting the employer's proffered
legitimate reasons must allow a factfinder reasonably to infer
that each of the employer's proffered non-discriminatory reasons

12

was either a <u>post hoc</u> fabrication or otherwise did not actually
motivate the employment action." <u>Fuentes</u>, 32 F.3d at 764
(internal quotations and citations omitted).  In other words,
"the non-moving plaintiff must demonstrate such weaknesses,
implausibilities, inconsistencies, incoherencies, or
contradictions in the employer's proffered legitimate reasons for
its action that a reasonable factfinder could rationally find
them unworthy of credence." <u>Id.</u> at 765 (internal quotations,
citations, and emphasis omitted).

    The Court finds that Plaintiff cannot make out a prima facie
case of employment discrimination on account of the simple fact
that Ms. Rutter was not "someone with equivalent or lesser
qualifications" than Plaintiff, <u>Johnson</u>, 949 F. Supp. at 1170,
but was, rather, significantly more qualified for the position in
the Diamond Bay.[6]  Among the job criteria listed in the position
description is the requirement that the applicant
"[d]emonstrate[] advanced knowledge of store products and
services and use[] this knowledge to build and enhance the level
of customer service provided."  (Van Aken Dep. Ex. 12) (emphasis

---

    [6]  Defendant also argues that Plaintiff cannot satisfy the
second element of the prima facie case because she did not apply
for the position.  The Court disagrees.  While Plaintiff did not
formally submit an application for the position after Ms.
DeFrancesco died, she repeatedly expressed her interest in the
Diamond Bay, and Ms. DeFrancesco's position in particular, to Ms.
McCord.  (Gilmore Dep. 37-44.)  Defendant does not dispute that
Plaintiff can prove the first and third elements of her prima
facie case.

added).  While Plaintiff had been selling jewelry for less than
four years when the Diamond Bay position became available,[7]
(Gilmore Dep. 16), Ms. Rutter had worked at Zales for at least
two years, in the Diamond Bay at Macy's for thirteen years (1987
to 2000), and in the Jewelry Department for one or two years
(2002 or 2003 to 2004) before being transferred back to the
Diamond Bay.  (Rutter Dep. 9-10; McCord Aff. ¶ 10.)  Ms. Rutter
also had completed a two-year training curriculum on diamonds
when she worked at Zales.  (Rutter Dep. 9.)  Indeed, Plaintiff
concedes that Ms. Rutter had "significantly more experience for
the position" than Plaintiff did.  (Pl.'s Statement of Undisputed
Material Facts ("SUMF") ¶ 29.)  As a result of her breadth of
experience with, and knowledge of, diamonds, Ms. Rutter
manifestly met Defendant's "advanced knowledge of store products"
criterion more effectively than Plaintiff did when the Diamond
Bay position opened up.

     Plaintiff attempts to overcome the hurdle of Ms. Rutter's
superior knowledge of, and experience with, diamonds by arguing
that Defendant did "not indicate that knowledge or experience in
the sales of diamonds [was] a consideration or factor in the
promotion to the diamond bay."  (Pl.'s Opp'n Br. 12.)  While the

---

     [7]  Although Plaintiff testified at her deposition that she
also had "limited" experience selling jewelry on the Boardwalk
during the summer, she never informed anyone in management at
Macy's of this experience.  (Gilmore Dep. 14.)

position description states that the job requires "advanced
knowledge of store products" in general terms, rather than
specifying familiarity with diamonds in particular, it is
abundantly apparent that the "products" mentioned in a
salesperson's job description are the same products that a
candidate would actually sell if she received the job.  Even if
that were not the case, however, nothing in the record suggests
that Plaintiff's general "knowledge of store products" was
superior to Ms. Rutter's, and the fact that Ms. Rutter had worked
at Macy's for two years longer than Plaintiff and received better
evaluations than Plaintiff are both evidence to the contrary.
(Gilmore Dep. 7-8, 48; Rutter Dep. 9.)  No matter how the facts
in the record are cast, Ms. Rutter simply does not appear to have
been "someone with equivalent or lesser qualifications" than
Plaintiff, Johnson, 949 F. Supp. at 1170, but instead appears to
have been much better qualified.

Plaintiff likewise tries to bridge the gap between her
qualifications and Ms. Rutter's by arguing that Ms. Rutter's
superior sales figures prior to her transfer to the Diamond Bay
were attributable to the fact that Ms. Rutter had been "given
preferential treatment in filling in, and being allowed to sell
at the diamond wall[,] which inflated her sales per hour, . . .
making her look more impressive and creating an illusion of
excellence."  (Pl.'s Opp'n Br. 13.)  Plaintiff has not identified

15

any evidence supporting her claim that Ms. Rutter in particular received such preferential treatment apart from her general accusation during her deposition that Diamond Bay associates called upon white employees to fill in for them more frequently than they called upon black employees.  (Gilmore Dep. 69.)  Even without Ms. Rutter's superior sales figures, however, the disparity between Ms. Rutter's and Plaintiff's product knowledge, experience, and evaluations still made Ms. Rutter a stronger candidate for the Diamond Bay position.  That is, even if the evidence were sufficient to suggest, as Plaintiff argues, that Ms. Rutter's sales figures were disproportionately high and should not have been considered by Defendant in deciding which employee to transfer to the Diamond Bay, Ms. Rutter would still have been the superior choice based on her other qualifications.

In her final effort to establish that she was as qualified for the Diamond Bay position than Ms. Rutter, Plaintiff refers repeatedly to the fact that Ms. Rutter was working in the Diamond Bay on October 21, 2000, when eleven rings were stolen.  Although Ms. Rutter was found not to be at fault for the stolen inventory, (Rutter Dep. 11; McCord Aff. ¶ 9), Plaintiff argues that Defendant should have taken the stolen rings into account when weighing the two women's qualifications in 2004.  Plaintiff proffers no evidence that Ms. Rutter was at fault for the crime of the four perpetrators.  That a store employee was the innocent

16

victim of a crime does not reduce the employee's qualifications. No reasonable jury could conclude that an incident for which Ms. Rutter was found not to be at fault years ago would be sufficient to overcome the substantial gap between the two women's qualifications. Even recognizing that a "plaintiff's burden to establish a prima facie case is not onerous," Simpson v. Kay Jewelers, 142 F.3d 639, 646 (3d Cir. 1998) (internal quotations and citations omitted), the Court finds that no reasonable jury could conclude that Ms. Rutter was "someone with equivalent . . . qualifications" to Plaintiff's, Johnson, 949 F. Supp. at 1170. Accordingly, the evidence fails to establish Plaintiff's prima facie case as a matter of law.

Even if the reasonable inferences from Plaintiff's evidence supported her prima facie case, however, Plaintiff could not survive the third stage of the McDonnell Douglas analysis because she cannot prove that Defendant's stated reasons for preferring Ms. Rutter over Plaintiff "are false and that the real reason for the employment decision was discriminatory." Waldron, 56 F.3d at 494. Unlike the "not onerous" burden on the plaintiff at the prima facie stage of the inquiry, Simpson, 142 F.3d at 646 (quotations and citation omitted), in order to prove that the nondiscriminatory rationale proffered by the employer is pretextual, a plaintiff must point to evidence that either discredits that rationale or that suggests that discrimination

17

was more likely than not the motivating force behind the
employment decision.  Waldron, 56 F.3d at 495 (citing Fuentes, 32
F.3d at 764).  Plaintiff's evidence, even giving her all
favorable inferences, is insufficient to meet this burden.
Defendant preferred Ms. Rutter over Plaintiff because of her
background in diamond sales, her education in the field, her
consistently favorable evaluations, and her strong sales
figures,[8] and found that the 2000 ring theft for which Ms. Rutter
was not at fault was "not determinative" of her suitability for
the position in 2004.  (Def.'s Reply Br. 11.)

        This is not a case in which Defendant has merely offered a
vague assertion, for example, that Ms. Rutter was "the right
person for the job," Iadimarco v. Runyon, 190 F.3d 151, 166 (3d
Cir. 1999); to the contrary, Defendant's explanation cites
multiple concrete qualities that made Ms. Rutter a stronger
candidate for the Diamond Row position than Plaintiff.  Plaintiff
has identified no evidence from which a reasonable jury could
find that this explanation is "a post hoc fabrication or

_____

        [8]  As the Court explained, supra, even if Ms. Rutter's sales
figures were disproportionately high, as Plaintiff alleges, and
the disparity in the two women's sales records is discounted,
Defendant still had multiple good reasons for preferring Ms.
Rutter over Plaintiff, including her knowledge of diamonds and
long career experience.  See Fuentes, 32 F.3d at 764 ("the
plaintiff's evidence rebutting the employer's proffered
legitimate reasons must allow a factfinder reasonably to . . .
[reject] each of the employer's proffered non-discriminatory
reasons").

otherwise did not actually motivate the employment action,"
Fuentes, 32 F.3d at 764 (internal quotations and citations
omitted), and indeed, Plaintiff concedes that Ms. Rutter had more
experience and better work evaluations than she did.  Defendant's
explanation that a then four-year-old incident that occurred when
Ms. Rutter was on duty was not alone determinative of her
suitability for the Diamond Bay position in light of her other
obvious qualifications is not such an implausible or incoherent
explanation "that a reasonable factfinder could rationally find
[it] unworthy of credence."  Id. at 765.

In short, Plaintiff has not produced evidence from which a
jury could find that Defendant's articulated reasons for hiring
Ms. Rutter rather than Plaintiff were false or unworthy of
credence.  The evidence indicates unmistakably that Defendant
hired the more experienced and more knowledgeable candidate for
the position and that Defendant's reasons can not be found to be
pretextual.  Accordingly, Defendant's motion for summary judgment
as to Plaintiff's failure to promote claims under Title VII and
the NJLAD will be granted.

   **C.   Disparate Treatment Claims**

In her Complaint, Plaintiff alleges that she has been
treated differently from her coworkers on account of her race,
citing a variety of examples of allegedly disparate treatment.
Defendant has moved for summary judgment on Plaintiff's disparate

treatment claims, arguing that there is no evidence in the record from which a jury could reasonably find that Plaintiff was subjected to disparate treatment on account of her race with regard to any of the instances of allegedly discriminatory treatment.  As the Court explains below, it largely agrees with Defendant that the evidence in the record is insufficient to show that Plaintiff was treated differently from her coworkers on account of her race.  However, with regard to Plaintiff's claim that she was denied the same opportunity that her white colleagues had to work at the Diamond Bay when associates for that bay were unavailable, and that this lost opportunity restricted her capacity to meet her sales goals and earn a quarterly bonus, the Court finds that there are unresolved questions of fact which make the entry of summary judgment inappropriate.

Under Title VII and the NJLAD, claims for disparate treatment are analyzed under the same burden-shifting framework discussed supra.  See Abramson v. William Paterson College of New Jersey, 260 F.3d 265, 281 (3d Cir. 2001); Grigoletti, 118 N.J. at 97.  To prove a claim of disparate treatment, a plaintiff must initially establish a prima facie case by showing (1) that she is a member of a protected class; (2) that she suffered "an adverse employment action . . . serious and tangible enough to alter . . . [her] compensation, terms, conditions, or privileges of

employment," <u>Storey v. Burns Intern. Security Services</u>, 390 F.3d 760, 764 (3d Cir. 2004) (internal quotations and citations omitted); and (3) that "nonmembers of the protected class were treated more favorably." <u>Abramson</u>, 260 F.3d at 281-82.

The vast majority of the alleged instances of disparate treatment identified by Plaintiff do not satisfy this standard, because Plaintiff's own evidence fails to establish that nonmembers of the protected class received more favorable treatment than Plaintiff. <u>Id.</u> For example, in her Complaint, Plaintiff alleges that she was asked to perform maintenance-related tasks, such as sizing watches, more often than her white colleagues were, and that as a consequence she had comparatively less time to sell jewelry and earn commissions. (Compl. Third Count ¶ 3, Fifth Count ¶ 2.) Plaintiff's own deposition testimony, which appears to be the only evidence in the record related to this allegation, does not support her claim. Plaintiff's entire testimony on the issue of maintenance work states:

```
Q:   Were the other people in the Gold Bay asked to do
     [maintenance] tasks as well?
A:   Yes.
Q:   Were you singled out to do these tasks over anyone
     else in the Gold Bay?
A:   Pretty much.
Q:   What do you base that on?
A:   Uhm, I would have to say Barbara Feldman and
     myself were probably equal.  We did them –
Q:   Barbara Feldman –
A:   Feldman.
Q:   –is Caucasian?
```

21

```
A:   She is Jewish, yes.
Q:   She is white?
A:   She is white.
```

(Gilmore Dep. 89.)  This evidence is plainly insufficient to establish that Plaintiff suffered "an adverse employment action . . . serious and tangible enough to alter . . . [her] compensation, terms, conditions, or privileges of employment," Storey, 390 F.3d at 764 (internal quotations and citations omitted), and that "nonmembers of the protected class were treated more favorably." Abramson, 260 F.3d at 281-82.  Even if being asked to perform maintenance tasks were sufficient to constitute an adverse employment action, Plaintiff's own evidence merely establishes that she and a white colleague were asked to perform such tasks frequently.  No reasonable jury could find based on this testimony that Plaintiff was singled out to perform maintenance work on the basis of her race.

Plaintiff's testimony regarding most of the other alleged instances of disparate treatment, which appears to be Plaintiff's only admissible evidence as to those claims,[9] likewise fails to establish that she suffered an adverse employment action that was not imposed upon nonmembers of her protected class.  For example, Plaintiff alleges in her Complaint that she was discriminated against because she was not selected to be a Counter Specialist, (Compl. Third Count ¶ 3, Fifth Count ¶ 2), yet it is undisputed

---

[9] See note 3, supra.

that of the two Counter Specialists in the Fine Jewelry
Department, one was working in the Diamond Bay before Plaintiff
was transferred to the Department and the other is an African
American woman.  (Pl.'s and Def.'s SUMF ¶ 96.)  Similarly,
Plaintiff alleges that Plaintiff was "given the least preference
in scheduling despite seniority."  (Compl. Third Count ¶ 3, Fifth
Count ¶ 2.)  Plaintiff's testimony on this issue, however,
actually indicates that when Plaintiff informed her manager that
a white colleague with less seniority than Plaintiff was given
Mondays off, and that Plaintiff asked to have Mondays off, the
white colleague was asked to work Mondays and Plaintiff was given
Mondays off.  (Gilmore Dep. 112-13.)  Additionally, the Complaint
alleges that Defendant "refus[ed] to provide black associates the
combination to the Diamond Bay [s]afe and vault alarm," (Compl.
Third Count ¶ 3, Fifth Count ¶ 2), yet there is no evidence
suggesting that such information was refused.  To the contrary,
Plaintiff's own testimony indicates that she never asked a
manager for the combinations, that a colleague provided her with
the combinations as early as 2003, and that the only African
American associate Plaintiff knew of who had asked for the
combinations had been provided with them.  (Gilmore Dep. 91, 94-
95.)  In short, with regard to all of these allegations of
disparate treatment, the Court agrees with Defendant that
Plaintiff has adduced no evidence indicating that she suffered

adverse employment actions under circumstances in which nonmembers of her protected class were treated more favorably.[10] Abramson, 260 F.3d at 281-82.

However, the Court finds that Defendant is not entitled to summary judgment on Plaintiff's claim that she was denied the opportunity to fill in for Diamond Bay associates on a discriminatory basis. At her deposition, Plaintiff testified that "the Diamond associates [would] ask for the Caucasian associates that [were] not scheduled at the Diamond Wall to replace them in their absence," rather than calling upon replacement associates on a race-neutral basis. (Gilmore Dep. 69.) Plaintiff estimated that she had observed Diamond Bay associates calling upon white employees to fill in for them approximately three times as often as they called upon black employees like Plaintiff. (Id.) In light of the uncontradicted

---

[10] The Complaint contains additional allegations of disparate treatment for which there appears to be no record support. Plaintiff has not identified any evidence supporting her allegation that she sought but was refused permission to work in the Diamond Bay during holiday or sales events, or that Defendant refused to process her employee grievances. (Compl. Third Count ¶ 3, Fifth Count ¶ 2.) Likewise, although the Complaint alleges that Defendant discriminated against Plaintiff by subjecting her to a different policy than her white colleagues with regard to whether she was "allowed to take credit for sales upon returns or exchanges of merchandise," (id.), Plaintiff's testimony indicates that she was not, in fact, subjected to such a policy. (Gilmore Dep. 95-102.) Rather, Plaintiff testified that she elected on her own to process returns and exchanges in an idiosyncratic manner, and that she could have employed the approach used by her white colleagues if she so desired. (Id. at 102.)

evidence that the most valuable merchandise in the Fine Jewelry
Department was located in the Diamond Bay, (Def.'s SUMF ¶ 5), and
the fact that associates in the Department received quarterly
bonuses for achieving certain sales-per-hour rates, (id. ¶¶ 54-
56), Plaintiff's testimony that she was restricted from selling
the most expensive products in the Department on a discriminatory
basis is sufficient to establish a prima facie case of disparate
treatment.  Abramson, 260 F.3d at 281-82.  There can be little
doubt that if Plaintiff was denied the opportunity to fill in at
the Diamond Bay on a discriminatory basis and if this impacted
her ability to earn a bonus, that this would be "an adverse
employment action . . . serious and tangible enough to alter . .
. [her] compensation . . . or [the] privileges of employment."
Storey, 390 F.3d at 764.

        Defendant does not so much "articulate [a] . . . legitimate,
non-discriminatory reason[] for its employment decision"
regarding Plaintiff's disparate treatment claim as it does
challenge the factual or evidentiary basis of Plaintiff's
claim.[11]  Waldron, 56 F.3d at 494.  Defendant points out, for

_____

        [11]  Defendant argues with regard to all of Plaintiff's
claims that any allegedly discriminatory conduct preceding
September 10, 2004 and May 16, 2004 are time-barred under Title
VII and the NJLAD, respectively.  The Court agrees with Plaintiff
that the continuous denial of the opportunity to fill in for
Diamond Bay associates constitutes a "continuing violation" and
is thus not time-barred.  West v. Philadelphia Elec. Co., 45 F.3d
744, 754 (3d Cir. 1995).  A discrimination claim is viable under
the continuing violation theory when "at least one act occurred

example, that Plaintiff did not keep a log of how often she and

her white colleagues were called to the Diamond Bay, and draws

the Court's attention to the deposition testimony of Plaintiff's

African American coworkers, both of whom testified that they had

sold items at the Diamond Bay.  (El Dep. 15; Cobb Dep. 16.)  But

Plaintiff need not keep a log of the allegedly discriminatory

conduct to prove that it took place, and her testimony based on

her personal experience and recollection is sufficient to create

a material question of fact about whether she was denied the

opportunity to fill in at the Diamond Wall on a racially

discriminatory basis, suffering loss of income therefrom.

Waldron, 56 F.3d at 501 ("the Supreme Court has made it clear

that self-serving testimony may be utilized by a party at summary

judgment") (citing Celotex, 477 U.S. at 324).

---

within the filing period" and when the discrimination is "more
than the occurrence of isolated or sporadic acts of intentional
discrimination."  Id. at 754-55 (internal quotations and
citations omitted).  Given that Plaintiff testified that the
denial of this opportunity is an ongoing problem, it is not
unreasonable to infer from her testimony that the discriminatory
conduct has occurred since September 10, 2004.  (Gilmore Dep. 69-
70.)  Moreover, the character and frequency of the alleged
discrimination suggests that it is continuous and repetitive,
rather than "the occurrence of isolated or sporadic acts of
intentional discrimination."  West, 45 F.3d at 754-55 (internal
quotations and citations omitted); see also Rush v. Scott
Specialty Gases, Inc., 113 F.3d 476, 482 (3d Cir. 1997) (noting
that the continuous and recurring nature of a violation makes it
suitable for analysis under the continuing violation theory).
The Court is thus not persuaded by Defendant's argument that
Plaintiff's disparate treatment claim is time-barred.

Because there are material questions of fact as to whether Plaintiff's opportunity to sell high-value jewelry at the Diamond Bay was restricted on account of her race, the Court will deny Defendant's motion for summary judgment as to this aspect of Plaintiff's disparate treatment claim in Count Three of the Complaint regarding allegedly discriminatory denial of the opportunity to earn additional income as a substitute for Diamond Bay associates.  Defendant's motion for summary judgment as to the remaining claims in Counts Three and Five of the Complaint will be granted.

### D.   Punitive Damages Claim

Finally, the Court will grant Defendant's motion for summary judgment as to Plaintiff's claim for punitive damages in Count Four of the Complaint.  To recover punitive damages on a Title VII claim, a plaintiff must prove that the employer "engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."  42 U.S.C. § 1981a(b)(1).  "The inquiry does not end with a showing of the requisite malice or reckless indifference on the part of certain individuals, however.  The plaintiff must impute liability for punitive damages to [the employer]."  Kolstad v. American Dental Ass'n, 527 U.S. 526, 539 (1999) (internal quotations and citations omitted).  The Court in Kolstad went on to explain that "an

27

employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's 'good-faith efforts to comply with Title VII.'"  Id. at 545.  An employer who undertakes such good-faith efforts at Title VII compliance "demonstrates that it never acted in reckless disregard of federally protected rights."  Id. at 544 (internal quotations and citations omitted).  The Kolstad good-faith inquiry centers on whether the employer took steps to "detect and deter Title VII violations" and to "enforce an anti-discrimination policy."  Id. at 546 (internal quotations and citations omitted).

The undisputed evidence in the record demonstrates that Defendant undertook good-faith efforts to comply with Title VII. Plaintiff concedes that Defendant provides each associate with the Macy's Associate Guide, which "contains a policy promoting ethics in the workplace, equal employment opportunity, and prohibiting unlawful harassment."  (SUMF ¶ 98.)  Defendant likewise posts notices around the workplace warning that "it is unlawful to discriminate because of Race . . ."  (Id. at ¶ 99.) Additionally, the evidence indicates that Macy's makes a multi-stage grievance procedure available to associates to resolve work-related concerns, including claims of discrimination.  (Id. at ¶ 100.)  There is no inference to be drawn from any evidence in the record that Defendant acted "with malice or with reckless

indifference" to Plaintiff's rights.[12]  42 U.S.C. § 1981a(b)(1).

Because the undisputed evidence in the record demonstrates

Defendant's good-faith efforts to comply with Title VII, the

Court will grant Defendant's motion for summary judgment as to

Plaintiff's claim for punitive damages under Title VII.

The Court will also grant Defendant's motion for summary

judgment as to Plaintiff's claim for punitive damages under the

NJLAD.  In order to recover punitive damages for employment

discrimination under the NJLAD, a plaintiff must establish that

(1) upper management participated in, or was deliberately

indifferent to, the discriminatory conduct, and (2) that the

discriminatory conduct was "especially egregious."  Rendine v.

Pantzer, 141 N.J. 292, 313 (1995).  For conduct to be

sufficiently egregious to warrant the imposition of punitive

damages, there must be "an intentional wrongdoing in the sense of

_____

[12] Plaintiff attempts to introduce evidence of such
indifference by relying upon a letter written by her attorney
which purports to "supplement answers to interrogatories."
(Pl.'s Opp'n Br. Ex. J.)  As Defendant notes, this letter was
submitted long after the close of discovery and just prior to the
dispositive motion deadline, and contains information not
referenced in the Complaint or in Plaintiff's deposition
testimony.  In any event, the letter does not create a question
of fact as to whether Defendant acted "with malice or with
reckless indifference" to Plaintiff's rights as to the sole
allegation of disparate treatment remaining in this case –
whether Plaintiff was denied the opportunity to sell high-value
jewelry by filling in at the Diamond Wall – since the letter does
not suggest that Defendant should have been aware of the
allegedly discriminatory manner in which Diamond Wall substitutes
were selected.

an evil-minded act or an act accompanied by a wanton and willful disregard of the rights of another." Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 49-50 (1984); Rendine, 141 N.J. at 314.  As the Court explained, supra, there is no evidence in the record suggesting that Defendant's upper management was deliberately indifferent to the disparate treatment alleged in Plaintiff's sole remaining claim, and there certainly is no evidence in this case of an "evil-minded" discriminatory act. Nappe, 97 N.J. at 49-50.  Defendant's motion for summary judgment as to Plaintiff's claim for punitive damages under the NJLAD will thus be granted.

## III. CONCLUSION

For the reasons discussed above, Defendant's motion for summary judgment as to Plaintiff's claims for failure to promote and for punitive damages will be granted.  Defendant's motion for summary judgment as to Plaintiff's claim for disparate treatment will be granted except with regard to Plaintiff's claim in Count Three of the Complaint that she was denied the opportunity to fill in at the Diamond Wall on a discriminatory basis, as to which Defendant's motion will be denied.  The accompanying Order will be entered.


**March 11, 2008**                    **s/ Jerome B. Simandle**
Date                                  JEROME B. SIMANDLE
                                      United States District Judge

30