IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

JANICE GILMORE,

        Plaintiff,

        v.

MACY'S RETAIL HOLDINGS,

        Defendant.

HON. JEROME B. SIMANDLE

Civil No. 06-3020 (JBS)

**<ins>OPINION</ins>**

APPEARANCES:

Keith T. Smith, Esq.
Ridgewood Plaza
2327 New Road
Suite 202
Northfield, NJ 08234
    Attorney for Plaintiff

Matthew G. Wapner, Esq.
KRUGMAN & KAILES, LLP
Park 80 West-Plaza Two
Saddle Brook, NJ 07663
    -and-
Robert P. Joy, Esq.
Jeffrey S. Siegel, Esq.
MORGAN, BROWN & JOY, LLP
200 State Street, 11th Floor
Boston, MA 02109
    Attorneys for Defendant

**SIMANDLE**, District Judge:

## I.   INTRODUCTION

This matter is before the Court upon the parties' <ins>in limine</ins> motions [Docket Items 73 and 83] in this case of alleged employment discrimination, for which the trial on the merits was scheduled to commence on January 21, 2009.  In her motion, Plaintiff seeks to amend the Joint Final Pretrial Order to assert

claims that were not included in her Complaint and which were not addressed during the parties' summary judgment motion practice. In its motions, Defendant seeks to preclude Plaintiff from introducing various categories of evidence, which it argues are irrelevant, prejudicial, and inadmissible.  For the reasons explained below, the Court will deny Plaintiff's motion and grant in part and deny in part Defendant's motions.

**II.  BACKGROUND**

   **A.  Facts**

   Plaintiff, an African American woman, was hired by the Macy's department store in Hamilton, New Jersey on November 6, 1989.  (Compl. First Count ¶ 1; Gilmore Dep. at 7-8.)  Between 1989 and 2001, Plaintiff worked in multiple departments at Macy's, ranging from the Men's Basics Department to the Women's Shoes Department.  (Gilmore Dep. at 15-16.)  Plaintiff was transferred to the Fine Jewelry Department in February 2001. (Id. at 16.)

   The Fine Jewelry Department at Macy's is divided into three areas, or "bays," each of which contains a separate category of products: the Diamond Bay, the Gold Bay, and the Watch Bay. (Id.)  Each associate in the Fine Jewelry Department is assigned to one of the three bays.  (Van Aken Dep. at 17.)  Of the three bays, the Diamond Bay is considered to be the most desirable assignment by associates in the Fine Jewelry Department on

account of the higher prices of the items sold in that bay.[1]
(Compl. First Count ¶¶ 10-11.)  While the employees in the
Jewelry Department have some opportunities to sell items outside
of the bays to which they are assigned – such as when no
personnel from a particular bay are available to assist a
customer – the associates' primary sales responsibilities are for
the items in their respective assigned bays.  (Van Aken Dep. at
17.)

    Plaintiff was transferred from the Shoe Department to the
Jewelry Department in 2001, where she worked as an associate in
the Gold Bay.  (Gilmore Dep. at 89.)  Plaintiff repeatedly
expressed to her supervisors her interest in being promoted to
the Diamond Bay, but in August 2004, when an elderly associate in
the Diamond Bay passed away, Macy's gave the position to Jeanette
Rutter, Plaintiff's white colleague, rather than Plaintiff.  (Id.
at 16, 37, 45.)  As the Court made clear in its March 11, 2008
Opinion, the evidence in this matter showed unmistakably that Mr.
Rutter was better qualified for the Diamond Bay position than
Plaintiff was at the time of the promotion:

> While Plaintiff had been selling jewelry for less than
> four years when the Diamond Bay position became
> available, (Gilmore Dep. at 16), Ms. Rutter had worked at
> Zales for at least two years, in the Diamond Bay at
> Macy's for thirteen years (1987 to 2000), and in the

---

[1]  While Macy's employees in the Fine Jewelry Department are
paid by the hour, they can receive a bonus for selling goods in
excess of their target sales goals.  (Van Aken Dep. at 18-19.)

>Jewelry Department for one or two years (2002 or 2003 to
>2004) before being transferred back to the Diamond Bay.
>(Rutter Dep. at 9-10; McCord Aff. ¶ 10.)  Ms. Rutter also
>had completed a two-year training curriculum on diamonds
>when she worked at Zales. (Rutter Dep. at 9.)  Indeed,
>Plaintiff concedes that Ms. Rutter had "significantly
>more experience for the position" than Plaintiff did.
>(Pl.'s Statement of Undisputed Material Facts ("SUMF") ¶
>29.)
>
>. . . .
>
>In her final effort to establish that she was [better]
>qualified for the Diamond Bay position than Ms. Rutter,
>Plaintiff refers repeatedly to the fact that Ms. Rutter
>was working in the Diamond Bay on October 21, 2000, when
>eleven rings were stolen.  Although Ms. Rutter was found
>not to be at fault for the stolen inventory, (Rutter Dep.
>at 11; McCord Aff. ¶ 9), Plaintiff argues that Defendant
>should have taken the stolen rings into account when
>weighing the two women's qualifications in 2004.
>Plaintiff proffers no evidence that Ms. Rutter was at
>fault for the crime of the four perpetrators.

Gilmore v. Federated Dept. Stores, Inc., No. 06-3020, 2008 WL

687260, at *5, *7 (D.N.J. Mar. 11, 2008) (footnote omitted).

In her Complaint, Plaintiff alleged that she and her African

American colleagues in the Jewelry Department were treated

differently from their white counterparts.  Specifically,

Plaintiff alleged (1) that her capacity to earn bonus pay was

limited by the fact that "the Diamond associates [would] ask for

the Caucasian associates that [were] not scheduled at the Diamond

Wall to replace them in their absence," rather than calling upon

replacement associates on a race-neutral basis, (Gilmore Dep. at

69); (2) that black associates were called upon to perform

maintenance tasks, such as repairing watches, more frequently

than white associates, (id. at 89); (3) that black associates were not given the combination to the alarm and vault, (id. at 90); (4) that Plaintiff was not able to become a "counter specialist" because she was black, (id. at 107); (5) that white associates were given preferential treatment with regard to scheduling, (id. at 112-13); and (6) that Macy's processed black associates' sales and returns differently from those of white associates.[2]  (Id. at 95-102.)

**B.   Procedural History**

Plaintiff filed a complaint with the United States Equal Employment Opportunities Commission ("EEOC") on July 7, 2005. (Gilmore Dep. at 174-75.)  On February 23, 2006, the EEOC issued a Dismissal and Notice of Rights informing Plaintiff that the Commission was "unable to conclude" that Defendant had violated Title VII, and notifying her that she had a ninety-day period to file a lawsuit.  (Def.'s Br. Ex. F.)  On May 10, 2006, Plaintiff filed her Complaint in this action in New Jersey Superior Court, and Defendant removed the matter to this Court [Docket Item 1]. In her Complaint, Plaintiff alleged that Defendant failed to promote her on account of her race in violation of the New Jersey Law Against Discrimination ("NJLAD") (Count I) and Title VII (Count II); that Defendant treated Plaintiff differently on

---

[2]  In December 2007, Plaintiff was promoted to a position in the Diamond Bay.  (Joint Final Pretrial Order at 3.)

account of her race in violation of the NJLAD and Title VII

(Counts III and V); and that Defendant should be liable for

punitive damages (Count IV).[3]

     After a period of discovery, Defendant filed a motion for

summary judgment, which this Court addressed in its March 11,

2008 Opinion and Order.[4]  As to Plaintiff's failure to promote

---

     [3]  Plaintiff also asserted a claim against various
individual John Doe Defendants who have never been identified or
served.

     [4]  As the Court noted in its March 11, 2008 Opinion,

     [m]ore than three months after receiving a copy of her
     deposition transcript, and only two weeks before the
     dispositive motion deadline of June 15, 2007 in this
     case, Plaintiff submitted an errata sheet in an effort to
     change approximately 193 instances of testimony in her
     deposition.  See February 26, 2008 Order [Docket Item
     39].  In her February 26, 2008 Order, Magistrate Judge
     Donio granted Defendant's motion to strike Plaintiff's
     errata sheet.  The Court does [not] consider the contents
     of Plaintiff's stricken errata in deciding the instant
     motion.

     Plaintiff also submitted as evidence in opposition to
     Defendant's motion numerous handwritten pages of what
     Plaintiff's counsel states are Plaintiff's personal notes
     that she took over the course of her employment.  (Pl.'s
     Br. Ex. I.)  Plaintiff seeks to use these notes as
     evidence that the events referenced in the notes took
     place.  To the extent that Plaintiff relies on the notes
     "to prove the truth of the matter[s they] assert[ ],"
     Fed. R. Evid. 801(c), the Court agrees with Defendant
     that the notes are hearsay.  Because "hearsay
     statement[s] . . . not capable of being admissible at
     trial" cannot "be considered on a motion for summary
     judgment," the Court likewise does [not] consider the
     contents of Plaintiff's notes on this motion.  Philbin v.

claims, the Court found that Plaintiff could not establish a prima facie case of racial discrimination "on account of the simple fact that Ms. Rutter was not 'someone with equivalent or lesser qualifications' than Plaintiff, [Johnson v. Penske Truck Leasing Co., 949 F. Supp. 1153, 1170 (D.N.J. 1996)], but was, rather, significantly more qualified for the position in the Diamond Bay." Gilmore, 2008 WL 687260, at *5.[5]

As to Plaintiff's disparate treatment claims, the Court found that Plaintiff's own evidence failed to support the vast majority of her allegations of disparate treatment. Id. at *8. Specifically, the Court determined that no reasonable jury could

_____

Trans Union Corp., 101 F.3d 957, 961 n. 1 (3d Cir. 1996) (internal quotations and citations omitted).

Gilmore, 2008 WL 687260, at *2 n.3.

[5] The Court went on to explain that

[e]ven if the reasonable inferences from Plaintiff's evidence supported her prima facie case, however, Plaintiff could not survive the third stage of the McDonnell Douglas analysis because she cannot prove that Defendant's stated reasons for preferring Ms. Rutter over Plaintiff "are false and that the real reason for the employment decision was discriminatory." [Waldron v. SL Industries, Inc., 56 F.3d 491, 494 (3d Cir. 1995)] . . . . Defendant preferred Ms. Rutter over Plaintiff because of her background in diamond sales, her education in the field, her consistently favorable evaluations, and her strong sales figures, and found that the 2000 ring theft for which Ms. Rutter was not at fault was not determinative of her suitability for the position in 2004.

Gilmore, 2008 WL 687260, at *7 (some internal quotations, citations, and footnotes omitted).

find from Plaintiff's evidence that she had been discriminated
against as a result of maintenance task and counter specialist
assignments, not being given the vault combination, employee
scheduling, or the processing of sales and returns.  Id. at *8-
*9.  As the Court explained, Plaintiff's own evidence on these
matters demonstrated that she was treated no worse than her white
colleagues.  Id.  However, with respect to a single aspect of
Plaintiff's disparate treatment claim, the Court denied
Defendant's motion for summary judgment:

> [T]he Court finds that Defendant is not entitled to
> summary judgment on Plaintiff's claim that she was denied
> the opportunity to fill in for Diamond Bay associates on
> a discriminatory basis.  At her deposition, Plaintiff
> testified that "the Diamond associates [would] ask for
> the Caucasian associates that [were] not scheduled at the
> Diamond Wall to replace them in their absence," rather
> than calling upon replacement associates on a
> race-neutral basis.  (Gilmore Dep. 69.)  Plaintiff
> estimated that she had observed Diamond Bay associates
> calling upon white employees to fill in for them
> approximately three times as often as they called upon
> black employees like Plaintiff.  (Id.)  In light of the
> uncontradicted evidence that the most valuable
> merchandise in the Fine Jewelry Department was located in
> the Diamond Bay, (Def.'s SUMF ¶ 5), and the fact that
> associates in the Department received quarterly bonuses
> for achieving certain sales-per-hour rates, (id. ¶¶
> 54-56), Plaintiff's testimony that she was restricted
> from selling the most expensive products in the
> Department on a discriminatory basis is sufficient to
> [permit this aspect of her disparate treatment claim to
> proceed to trial].

Id. at *10.

On June 5, 2008, Magistrate Judge Donio convened a Final
Pretrial Conference [Docket Item 49], but, owing to Plaintiff's

8

apparent failure to prepare for the Conference, (see Docket Item 55), Judge Donio adjourned the Conference until August 12, 2008. The Final Pretrial Order, signed by counsel for both parties and by Judge Donio, makes clear that Plaintiff's claim relating to the alleged failure of Defendant to schedule associates to fill in at the Diamond Wall on a race-neutral basis is "the only portion of the only remaining claim for trial." (Docket Item 60 at 3) (emphasis added). In an Order entered October 2, 2008 [Docket Item 63], the Court informed counsel that the jury trial on the merits of this aspect of Plaintiff's remaining claim would commence on January 20, 2009.[6]

Defendant filed its in limine motions on December 22, 2008, and on December 29, 2008 – more than four months after the entry of the Joint Final Pretrial Order and twenty-three days before the trial on the merits is scheduled to commence – Plaintiff filed her motion to amend the Complaint.[7] The Court heard oral

---

[6] At Plaintiff's request, the trial was subsequently adjourned until January 21, 2009. (Docket Item 91 at 1.) At the January 14, 2008 hearing, it was determined that the trial would commence on February 2, 2009, so that these last-minute motions could be decided before trial.

[7] Plaintiff did not timely file her opposition to Defendant's motions in limine. Plaintiff filed a belated submission upon the electronic docket on January 14, 2009, the day the Court heard oral argument on the parties' motions. As the Court indicated at the January 14 hearing, it considers the contents of Plaintiff's untimely submission in resolving the motions under consideration herein.

argument on the parties' motions at a hearing convened on January 14, 2009, and reserved decision.

## III. DISCUSSION

### A.   Plaintiff's Motion to Amend

Plaintiff seeks to amend her Complaint to assert three new counts against Defendant for conduct which allegedly transpired after she filed the original Complaint.  Specifically, Plaintiff now alleges that, after she was promoted to the Diamond Bay in 2007, Defendant discriminated against her by under-reporting her sales data (proposed Count Seven), intentionally inflicted emotional distress upon her through such deliberate under-reporting (proposed Count Eight), and created a hostile work environment (proposed Count Nine).  For the reasons explained below, the Court will deny Plaintiff's motion.

Although Plaintiff has styled her motion as a motion to file an amended complaint, "[t]he procedural posture of this case demonstrates that the instant motion[, which was filed after the parties' Final Pretrial Conference and the entry of the Joint Final Pretrial Order,] . . . must be treated as a motion to amend the final pretrial order."  <u>Pharmaceutical Sales and Consulting Corp. v. J.W.S. Delavau Co., Inc.</u>, 59 F. Supp. 2d 408, 411 (D.N.J. 1999).  Federal Rule of Civil Procedure 16(e), which addresses the entry and modification of such orders, provides in relevant part that "[t]he court may hold a final pretrial

conference to formulate a trial plan, including a plan to facilitate the admission of evidence . . . . The court may modify the order issued after a final pretrial conference <u>only to prevent manifest injustice</u>." Fed. R. Civ. P. 16(e) (emphasis added). Under Rule 16(e), "the standard is . . . stringent, and final pretrial orders are binding on the parties in the absence of a showing of manifest injustice." <u>Pharmaceutical Sales and Consulting Corp.</u>, 59 F. Supp. 2d at 411 (citation omitted); <u>see also</u> <u>Petree v. Victor Fluid Power, Inc.</u>, 831 F.2d 1191, 1194 (3d Cir. 1987) ("The finality of the pretrial order contributes substantially to the orderly and efficient trial of a case."). "The parties are bound by their agreement to so limit issues and may not introduce at trial issues excluded in the pretrial order." <u>Randolph County v. Alabama Power Co.</u>, 784 F.2d 1067, 1072 (11th Cir. 1986); <u>see also</u> <u>United States v. Pottorf</u>, 881 F. Supp. 482, 485 (D. Kan. 1995) ("It is proper to exclude from a case any issue not contained in the pretrial order, whether it be a defense or a theory of recovery advanced by the plaintiffs, absent the requisite showing.").

As this Court has explained:

> While it is within the court's discretion to allow amendments to the joint final pre-trial order, <u>see</u>, e.g., <u>Joy Mfg. Co. v. Sola. Basic Industries, Inc.</u>, 697 F.2d 104, 109 (3d Cir. 1982), Rule 16(e) of the Federal Rules of Civil Procedure provides that such orders should not be modified except to avoid manifest injustice. In 1977, prior to the amendment to Rule 16(e) to include the "manifest injustice" standard for amendments to the final

11

> pretrial order, the Third Circuit noted that there are
> four main considerations behind this inquiry when it
> comes to adding new witnesses: (1) prejudice or surprise
> in fact to the nonmoving party; (2) ability of that party
> to cure the prejudice; (3) extent to which waiver of the
> rule would disrupt the orderly and efficient trial of the
> case; (4) bad faith or willfulness on the part of the
> movant. <u>Meyers v. Pennypack Woods Home Ownership Ass'n</u>,
> 559 F.2d 894, 905 (3d Cir. 1977) . . . . If anything, the
> standard required by Rule 16(e) is more stringent than
> the old <u>Meyers</u> standard.  More recent cases have focused
> on additional factors such as . . . whether the decision
> to amend . . . is a matter of a new strategy or tactic.
> <u>Fashauer v. New Jersey Transit Rail Operations, Inc.</u>, 57
> F.3d 1269, 1287 (3d Cir. 1995).

<u>Scopia Mortg. Corp. v. Greentree Mortg. Co., L.P.</u>, 184 F.R.D.

526, 528-29 (D.N.J. 1998).

Applying these considerations to the facts of this case, the

Court will deny Plaintiff's motion to amend.  As an initial

matter, as Defendant notes in its opposition to Plaintiff's

motion, Plaintiff's motion is procedurally improper and does not

afford a factual basis for the relief she seeks.  The

Certification submitted by Plaintiff in support of her motion is

neither signed nor dated, (Docket Item 87), and, as Plaintiff

indicates in her January 6, 2009 letter to the Court, contrary to

the representation by her attorney, Keith T. Smith, Esq., that

the Certification was filed on Ms. Gilmore's behalf, Mr. Smith

"did not discuss nor notify [Plaintiff] of additional amendments"

until well after the Certification was filed.[8]  (Docket Item 95

---

[8]  As the parties indicated at the January 14, 2009 hearing,
Plaintiff, during her deposition on the morning of January 14,
2009, testified as to numerous material inaccuracies in the

at 1.)  The Certification Mr. Smith himself submitted in support
of the motion to amend is signed and dated, (Docket Item 86), but
is replete with statements concerning Ms. Gilmore's working
environment about which Mr. Smith has no personal knowledge.  The
upshot of these serious shortcomings is that Plaintiff has failed
to present a factual basis for the relief she seeks in her motion
to amend.

     In addition to these procedural and factual shortcomings,
the Pennypack Woods factors weigh against granting Plaintiff's
motion for leave to amend.  As to considerations of prejudice or
surprise to Defendant, Plaintiff argues that she and Defendant do
not have a "static" relationship, in that she has been employed
by Defendant throughout this litigation and continued to suffer
from alleged mistreatment after the parties' summary judgment
motion practice, and that she has kept Defendant apprised of her
misgivings related to her employment through a series of letters
from her attorney.[9]  (Siegel Decl. Ex. 3.)  According to

_____

certification that had been submitted on her behalf.  At oral
argument, Mr. Smith indicated that he recollected that Ms.
Gilmore had signed a similar certification last Fall, but that
she did not sign the certification that he submitted in
supporting this motion.  It is rather breathtaking that
Plaintiff's counsel would submit a document for filing with the
Clerk, as if it had been signed under oath by his client, when in
fact it was not.

     [9]  Plaintiff has attempted to characterize many of these
letters as being informal amendments to Defendant's
interrogatories.  As the Court explains in detail, infra, these
documents, which Plaintiff did not sign and which do not respond

13

Plaintiff, these letters from her attorney erase any risk that
Defendant might be prejudiced by the eve-of-trial amendment to
the Joint Final Pretrial Order.

Notwithstanding Plaintiff's counsel's letters to Defendant,
considerations of prejudice caused by Plaintiff's proposed
amendment do not cut in Plaintiff's favor.  By declining to amend
her Complaint until the eve of trial and opting instead to write
letters to Defendant to complain of ongoing misgivings, Plaintiff
failed to take proper steps to attempt to assert her new proposed
claims.  As Defendant notes, these proposed claims – particularly
Plaintiff's proposed intentional infliction of emotional distress
and hostile work environment claims – present entirely new
theories of liability in this action.  See Rehabilitation
Institute of Pittsburgh v. Equitable Life Assur. Soc., 131 F.R.D.
99, 102 (W.D. Pa. 1990) ("if the amendment substantially changes
the theory on which the case has been proceeding and is proposed
late enough so that the opponent would be required to engage in
significant new preparation, the court may deem it prejudicial")
(quoting 6 C. Wright & A. Miller, Federal Practice and Procedure
§ 1487 (1990)).  The court in Eads ex rel. Eads v. Unified School
Dist. No. 289, Franklin County, 184 F. Supp. 2d 1122, 1130 (D.

---

to any interrogatory posed by Defendant, manifestly are not
interrogatory responses, but are instead simply letters informing
Defendant of Plaintiff's ongoing grievances in the Jewelry
Department.

Kan. 2002), described the prejudice that can result from a litigant's last-minute effort to assert a new claim not included in the joint final pretrial order:

> If the plaintiff were allowed to add a [new] claim, the prejudice to the defendants would be real and substantial. The plaintiffs have never included this allegation in their complaint or the pretrial order. In reliance on the plaintiffs' failure to plead such a claim, the defendants filed dispositive motions not addressing these factual allegations or the [] law governing the same. There is no reason to believe that the defendants conducted any discovery relevant to this [] claim and the time for discovery has expired long ago. There would be substantial cost and delay to all if the court were to allow this amendment.

184 F. Supp. 2d at 1130. These concerns are all applicable in this case, and demonstrate forcefully that the <u>Pennypack Woods</u> consideration of prejudice weighs against granting Plaintiff's motion to amend.

Nor does Defendant have "the ability . . . to cure the prejudice" without "disrupt[ing] the orderly and efficient trial of the case." <u>Scopia Mortg. Corp.</u>, 184 F.R.D. at 528 (citing <u>Pennypack Woods</u>, 559 F.2d at 905). While the Court ordered that Plaintiff be deposed regarding her new allegations in an effort to mitigate a portion of the prejudice imposed by Plaintiff's motion, (Docket Item 91 at 2), the short period between Plaintiff's deposition and the commencement of trial affords Defendant little to no opportunity to investigate Plaintiff's latest allegations and prepare a defense, much less to conduct additional discovery into matters raised during Plaintiff's

deposition.[10]  Defendant would then need to identify and develop defenses, documents and trial witnesses related to these belated claims.  Defendant's capacity to prepare for trial would be compromised if it were forced, in the last days before trial, to investigate and respond to new allegations and theories of the case.  Moreover, with regard to whether the proposed amendment "would disrupt the orderly and efficient trial of the case," Scopia Mortg. Corp., 184 F.R.D. at 528 (citing Pennypack Woods, 559 F.2d at 905), the Court should not be forced by Plaintiff's last-minute submission to reopen discovery and reschedule the upcoming jury trial on the merits of Plaintiff's remaining claim. This is especially so where this non-complex case has already been pending for almost 30 months.

Finally, the fact that Plaintiff and her attorney knew of the facts underlying her proposed new claims for months before the Joint Final Pretrial Order was entered indicates that her last-minute attempt to amend her pleadings is "willful[]," id., or "tactical."[11]  Id. at 531.  As Plaintiff's proposed amended

---

[10]  It bears noting that while Plaintiff initially agreed to be deposed during the week of January 5, she later refused to be deposed on any date that week, and her deposition did not take place until January 14, following a telephone conference call with Magistrate Judge Donio.  Even this effort to mitigate the prejudice caused by Plaintiff's last-minute effort to amend her pleadings, then, was frustrated by Plaintiff's refusal to be deposed on a timely basis.

[11]  See Note 10, supra.

complaint and various letters from Plaintiff's counsel to
Defendant make clear, Plaintiff and her attorney were aware of
the facts underlying her three proposed new claims months prior
to the entry of the Joint Final Pretrial Order.  In particular,
with regard to the alleged manipulation of Plaintiff's sales data
underlying her proposed Counts Seven and Eight, the proposed
amended complaint makes clear that the conduct at issue concerns
"the period of November 2, 2007 to February 2, 2008," (Docket
Item 85 at 2), and Plaintiff's brief indicates that Plaintiff and
her attorney knew of such alleged conduct in March 2008 – more
than five months prior to the entry of the Joint Final Pretrial
Order.  (Pl.'s Br. at 3.)  Likewise, as the letters from
Plaintiff's attorney to defense counsel demonstrate, Plaintiff
and her attorney knew of the remainder of the newly alleged
conduct no later than December 2007 – eight months prior to the
entry of the Joint Final Pretrial Order, and at least a year
before the motion to amend at issue herein was filed.  (Siegel
Decl. Ex. 3.)  This amounts to clearly undue delay by Plaintiff.
Plaintiff could have sought leave to amend her Complaint at any
point during these months before signing the Joint Pretrial
Order, which specifies that the claim relating to the alleged
failure of Defendant to schedule associates to fill in at the
Diamond Wall on a race-neutral basis is "the only portion of the
only remaining claim for trial."  (Docket Item 60 at 3.)  Rather

than seeking such leave, Plaintiff waited until after the entry of the Joint Pretrial Order, and just weeks before trial, to attempt to inject new claims into the case.  Plaintiff's delay is unexplained, and it is certainly not the product of any conduct by Defendant or defense counsel in this litigation.

In light of this history, Plaintiff's preference not to "file a new complaint of discrimination for incidents and facts that arise after Defendant filed its motion for summary judgment in June of 2007," (Pl.'s Br. at 3), falls far short of the "stringent" standard that a party must demonstrate in order to raise at trial claims that were not included in the Joint Final Pretrial Order.  Pharmaceutical Sales and Consulting Corp., 59 F. Supp. 2d at 411 (citation omitted).  For the reasons discussed above, the Court construes Plaintiff's motion as a motion to amend the Joint Final Pretrial Order, and will deny the motion.

**B.  Defendant's _In Limine_ Motions**

Defendant has filed several in limine motions seeking to have the Court exclude certain categories of evidence which it argues are irrelevant, prejudicial, and otherwise inadmissible. The Court reviews the merits of these motions in turn below.[12]

––––––––––––––––

[12]  In addition to the motions reviewed below, Defendant has moved to preclude Plaintiff from introducing evidence relating to Plaintiff's 2001 transfer from the Shoe Department to the Jewelry Department, which Plaintiff apparently believes was the product of discrimination [Docket Item 76].  At the January 14, 2009 hearing, Plaintiff indicated that she would not seek to introduce evidence at trial pertaining to her allegations that this

  1.   Motion to Exclude Evidence of Issues Decided Upon
       Summary Judgment

Defendant first argues that the Court should preclude
Plaintiff from admitting at trial evidence relating to claims and
issues that the Court resolved in Defendant's favor upon summary
judgment.  As Defendant notes, notwithstanding the Court's
determination in its March 11, 2008 Opinion that Plaintiff failed
to establish a prima facie case for her failure-to-promote claims
under Title VII or the NJLAD, Gilmore, 2008 WL 687260, at *5, and
that, as to "[t]he vast majority of the alleged instances of
disparate treatment identified by Plaintiff[,] . . . Plaintiff's
own evidence fails to establish that nonmembers of the protected
class received more favorable treatment than Plaintiff," id. at
*8, Plaintiff has indicated that she intends to present evidence
relating to these claims at trial.  Specifically, Plaintiff lists
in the Joint Final Pretrial Order the following "contested
facts":

> 20.  Plaintiff was never offered the combination to the
>      safe [several times] although she was frequently
>      assigned to count the diamonds therein and would
>      therefore have to wait to begin a count until a
>      later arriving white employee would arrive at the
>      store. [Used to show discriminatory animus – not
>      part of a particularized claim]
>
> 21.  A white employee was responsible for a $33,000 loss
>      of diamond and they promoted her.

transfer was discriminatory.  Defendant's motion will accordingly
be dismissed as moot.

> 22.  Plaintiff was made to size watches inordinately
>       thus being denied opportunity to sell at the
>       diamond wall.

(Joint Final Pretrial Order at 6.)  Defendant argues that it

should not be forced to relitigate at trial issues and claims on

which it prevailed upon summary judgment.

The Court will grant Defendant's motion to preclude

Plaintiff from introducing evidence relating to such issues and

claims decided in Defendant's favor upon summary judgment.  As

Rule 56(a), Fed. R. Civ. P., makes clear, summary judgment may be

entered as to an entire claim "or part of the claim."  Fed. R.

Civ. P. 56(a); see also France Stone Co., Inc. v. Charter Tp. of

Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).  Rule 56(d)(1),

Fed. R. Civ. P., addresses the disposition of facts "not

genuinely at issue" in an action after the Court has entered

summary judgment as to some, but not all, of a Plaintiff's

claims:

> If summary judgment is not rendered on the whole action,
> the court should, to the extent practicable, determine
> what material facts are not genuinely at issue . . . . It
> should then issue an order specifying what facts –
> including items of damages or other relief – are not
> genuinely at issue.  The facts so specified must be
> treated as established in the action.

Fed. R. Civ. P. 56(d)(1).

In its March 11, 2008 Opinion and Order, the Court

"determine[d] what material facts are not genuinely at issue" in

this action, and entered summary judgment as to the claims

Plaintiff had failed to sustain.  Id.  Included among the facts

as to which the Court concluded that there was no genuine issue

were the three above-listed facts which Plaintiff seeks to

contest at trial.  First, as to Plaintiff's claim, asserted in

Count Three of the Complaint, that Defendant withheld the

combination to the vault from black associates, the Court

explained:

> [T]he Complaint alleges that Defendant "refus[ed] to
> provide black associates the combination to the Diamond
> Bay [s]afe and vault alarm," (Compl. Third Count ¶ 3,
> Fifth Count ¶ 2), yet there is no evidence suggesting
> that such information was refused.  To the contrary,
> Plaintiff's own testimony indicates that she never asked
> a manager for the combinations, that a colleague provided
> her with the combinations as early as 2003, and that the
> only African American associate Plaintiff knew of who had
> asked for the combinations had been provided with them.
> (Gilmore Dep. 91, 94-95.)

Gilmore, 2008 WL 687260, at *9.  In other words, Plaintiff has no

probative evidence of disparate treatment as to the safe

combination.

As to Ms. Rutter, the white employee who was promoted to the

Diamond Bay before Plaintiff, the Court held that Plaintiff's

evidence was insufficient to survive summary judgment on her

failure-to-promote claim.  Id. at *6.  The Court recognized that

Ms. Rutter was substantially more qualified for the position than

Plaintiff was; that Plaintiff had "proffer[ed] no evidence that

Ms. Rutter was at fault for the [diamond theft in 2000]"; and

that "[n]o reasonable jury could conclude that an incident for

which Ms. Rutter was found not to be at fault years ago would be
sufficient to overcome the substantial gap between the two
women's qualifications." Id. at *6. Again, there is no
probative evidence that Plaintiff was as well-qualified as Ms.
Rutter.

Finally, as to the matter of sizing watches, the Court
entered summary judgment as to this aspect of Plaintiff's claim,
finding that "Plaintiff's own evidence merely establishes that
she and a white colleague were asked to perform such tasks
frequently." Id. at *9; see also Abramson v. William Paterson
College of New Jersey, 260 F.3d 265, 281 (3d Cir. 2001) (to prove
disparate treatment, plaintiff must adduce evidence demonstrating
that "nonmembers of the protected class were treated more
favorably"); Aramburu v. Boeing Co., 112 F.3d 1398, 1406 (10th
Cir. 1997) ("unfavorable treatment of [Plaintiff] does not
support an inference of improper animus when other minorities are
accorded the same treatment as the non-minority employees").

The Court's March 11, 2008 Order made clear that these facts
and claims "are not genuinely at issue." Fed. R. Civ. P. 56(d).
The Order provided that Defendant's motion for summary judgment
as to Plaintiff's failure-to-promote claims was granted in its
entirety, (Docket Item 41 at 1), and that summary judgment as to
all of Plaintiff's claims for disparate treatment was entered
"except as to Plaintiff's disparate treatment claim that she was

denied the opportunity to fill in at the Diamond Wall."  (Id.)
Having failed to prevail upon these matters at the summary
judgment stage, Plaintiff now attempts to take a second bite at
the apple, seeking to reassert these matters at trial.  Rule
56(d) makes clear that Plaintiff is foreclosed from relitigating
these facts, which "must be treated as established in the
action."  Fed. R. Civ. P. 56(d).  Plaintiff proffers no new
evidence upon these facts that was unavailable when the partial
summary judgments were entered against her.  Defendant, having
once demonstrated that there is no genuine issue as to the facts
Plaintiff now seeks to re-contest, is entitled not to have to
defend against the same facts before a jury.  The Court will
accordingly grant Defendant's motion to preclude Plaintiff from
introducing evidence of claims decided in Defendant's favor upon
summary judgment.

> 2.   Motion to Exclude Plaintiff's "Supplemental
>      Interrogatory Answers"

Defendant has moved to preclude Plaintiff from introducing
at trial certain letters from her attorney which Plaintiff
asserts are "supplemental answers" to Defendant's
interrogatories.  These letters, listed in the Joint Final
Pretrial Order under "Plaintiff's Exhibits," (Docket Item 60 at
13-14), do not purport to respond to any specific interrogatory
submitted by Defendant, but instead consist of summaries of

Plaintiff's ongoing misgivings concerning her employment at Macy's.  (Siegel Decl. Ex. 3.)

Defendant's motion to preclude Plaintiff from introducing these letters will be granted.  First, as Defendant notes, while Plaintiff has characterized these letters as being supplemental answers to Defendant's interrogatories, they are not proper interrogatory responses – none of these letters identifies an interrogatory question to which it purports to respond, (id), and the letters do not comply with Federal Rule of Civil Procedure 33(b)(3)'s requirement that interrogatories be answered "in writing under oath."[13]  Fed. R. Civ. P. 33(b)(3).  More fundamentally, a litigant

> may not introduce statements from its own answers to interrogatories or requests for admission as evidence because such answers typically constitute hearsay when used in this manner.  See Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541-42 (10th Cir. 1995) (citing H.B. Zachry Co. v. O'Brien, 378 F.2d 423, 425-26 (10th Cir. 1967)); Walsh v. McCain Foods Ltd., 81 F.3d 722, 726-27 (7th Cir. 1996) (hearsay in requests for admissions); Grace & Co. v. City of Los Angeles, 278 F.2d 771, 776 (9th Cir. 1960) (hearsay in interrogatories); cf. Kirk v. Raymark Indus., Inc., 61 F.3d 147, 167-68 (3d Cir. 1995) (concluding that self-serving answers to interrogatories do not have sufficient guarantees of trustworthiness to fall under the residual exception to the hearsay rule set forth in Fed. R. Evid. 803(24)).

---

[13]  It bears noting that this is not the first time that Plaintiff has attempted to submit unsigned, procedurally improper materials from her attorney in apparent disregard of the Federal Rules of Civil Procedure and the Federal Rules of Evidence.  See Notes 4 and 8, supra; see also Gilmore, 2008 WL 687260, at *7; (Docket Item 39) (Order striking Plaintiff's errata sheet).

<u>Underberg v. United States</u>, 362 F. Supp. 2d 1278, 1283 (D.N.M. 2005); <u>see also</u> <u>Duff v. Lobdell-Emery Mfg. Co.</u>, 926 F. Supp. 799, 803 (N.D. Ind. 1996) (citing Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, 8A Federal Practice and Procedure § 2180, at 340-41 (1994)).

To the extent Plaintiff seeks to "introduce statements from [her] own answers to interrogatories," <u>id.</u>, to "prove the truth of the matter[s they] assert[]," Fed. R. Evid. 801(c), these statements are inadmissible hearsay, and Defendant's motion to preclude admission of such statements will be granted.[14]

      3.  <u>Motion to Exclude Evidence Relating to Plaintiff's Experience in the Jewelry Department After Being Promoted to the Diamond Bay</u>

In its final <u>in</u> <u>limine</u> motion, Defendant seeks to preclude Plaintiff from introducing evidence relating to her allegations of ongoing discrimination in the Jewelry Department after she was promoted.  As the Court noted, <u>supra</u>, in December 2007, Plaintiff

---

[14]  If Plaintiff sought to introduce these letters in order to establish that Defendant was on notice of Plaintiff's dissatisfaction with her working environment, the letters would not be offered "to prove the truth of the matter asserted," Fed. R. Evid. 801(c), and would be admissible for the limited "purpose of showing the probable state of mind of the listener[,] includ[ing] being placed on notice."  <u>Lester v. Percudani</u>, No. 01-1182, 2008 WL 4722749, at *9 n.23 (M.D. Pa. Oct. 24, 2008) (quoting 30B Michael H. Graham, Federal Practice and Procedure § 7005, at 64, 82 (4th interim ed. 2006)).  Such notice, however, is irrelevant to the sole remaining claim of failure to assign Plaintiff to the Diamond Bay as frequently as similarly-situated white sales associates in the jewelry department before December, 2007.  These irrelevant letters of counsel would therefore be inadmissible under Rule 402, Fed. R. Evid.

was promoted to a position in the Diamond Bay.  (Joint Final

Pretrial Order at 3.)  In the Joint Final Pretrial Order,

Plaintiff indicates that she intends to testify about events

relating to her sales in the Diamond Bay after her promotion,

which she argues are reflective of Defendant's racially-based

animus toward her.  Specifically, Plaintiff identifies the

following contested facts in the Joint Final Pretrial Order:

> 13.  Defendant continued to harass Plaintiff and
> attempted to show her as [a] less productive sales
> person by various tactics manipulating numbers to
> show her to have less sales than she actually had.
> Plaintiff will rely on actual sales receipts, and
> documents in support of this . . . .
>
> 26.  The ongoing harassment even after promotion to the
> diamond bay is intentional and must be done with
> the knowledge of management.

(Docket Item 60 at 5-6.)

Defendant argues that evidence pertaining to Plaintiff's

grievances over events that took place after Plaintiff was

promoted to the Diamond Bay is irrelevant to her sole remaining

disparate treatment claim, which addresses whether she was denied

the opportunity to fill in for associates in the Diamond Bay when

she worked in the Gold Bay.  According to Defendant, "Plaintiff

has not been able to identify any individual who she believes

modified her sales receipts[, and t]here is no factual link

between the post-promotion events and her remaining claim . . ."

(Def.'s Br. at 7.)  Defendant emphasizes the narrowness of the

lone remaining claim in this case, and argues that a series of

irrelevant and wasteful mini-trials will ensue if Plaintiff is permitted to testify about "every little occurrence in the department after December 2007." (Id.)

The Court will grant in part and deny in part Defendant's motion to preclude evidence relating to post-promotion events for the reasons now explained. Initially, the Court agrees with Defendant that Plaintiff's failure to identify a similarly situated non-minority employee whose sales receipts were treated more favorably than Plaintiff's precludes Plaintiff from asserting a separate claim relating to her post-promotion complaints of manipulated receipts. See Abramson, 260 F.3d at 281. However, the Court finds that Plaintiff's testimony concerning Defendant's alleged "manipulat[ion of] numbers to show her to have less sales than she actually had," (Docket Item 60 at 5), following her promotion to the Diamond Bay, while insufficient in itself to support a separate claim, may assist the jury in determining whether to infer that the alleged disparate treatment underlying Plaintiff's remaining claim was the product of animus. See, e.g., Riordan v. Kempiners, 831 F.2d 690, 698 (7th Cir. 1987) ("A plaintiff's ability to prove discrimination indirectly, circumstantially, must not be crippled by evidentiary rulings that keep out probative evidence because of crabbed notions of relevance or excessive mistrust of juries."); cf. McPheeters v. Black & Veatch Corp., 427 F.3d 1095,

27

1101 (8th Cir. 2005) ("background evidence of an employer's discriminatory policies or practices may be critical for the jury's assessment of whether a given employer was more likely than not to have acted from an unlawful motive") (citation omitted).  If the jury credits Plaintiff's evidence that Defendant manipulated her sales figures even after placing her into the Diamond Bay, and thereby undermined her ability to earn commissions after she was promoted to the Diamond Bay, the jury might infer that the pre-promotion disparity in Diamond Bay substitution assignments was the product of animus, not happenstance.

The Court is presently unable to determine whether permitting Plaintiff to present this evidence would be so wasteful of time as to require exclusion under Rule 403, Fed. R. Evid.  Until the contours of this evidence are more fully known, the Court cannot confidently rule upon its probative weight as contrasted with the prospect of undue prejudice, confusion or consumption of time at trial, all as required by Rule 403. Plaintiff's evidence on this point will come in the form of her testimony, which is already expected to be the focus of the trial, and the copies of receipts of her sales which she has already provided to Defendant.  The extent of any dispute about the parties' sales receipts and calculations is presently unknown.  Defendant's evidence on this issue will presumably

consist of the testimony of a person familiar with Macy's computer system who will seek to explain how Macy's computers calculated Plaintiff's sales figures and to address whether Plaintiff's figures had been "manipulat[ed]."  (Docket Item 60 at 5.)  The Court presently finds only that evidence of Defendant's alleged manipulation of Plaintiff's sales figures for the period November 2007 to February 2008 is not ruled out.  If Defendant continues to object to this evidence, once the contours of the evidence are known, Defendant may renew its objections under Rule 403 and the Court will address the matter, all before this evidence can be offered at trial.

Defendant's concern over the trial spilling over to address each and every misgiving Plaintiff has had in the Jewelry Department since 2007 is well-taken, however.  As there is no hostile work environment claim in this case, Plaintiff will not be permitted to testify as to "ongoing harassment," (Docket Item 60 at 6), that is not tied to her claim of being denied the opportunity to fill in at the Diamond Bay (or to receive a commission on the sales she achieved after being promoted to the Diamond Bay), such as Plaintiff's grievances concerning Defendant's attendance policy, (id. at 5), its treatment of employees who read while on the job, (id.), and its alleged failure to have an adequate grievance policy.  (Id. at 6.) Unlike Plaintiff's allegation concerning the alleged manipulation

29

of her sales receipts at the Diamond Bay, these misgivings are insufficiently tied to the sole claim remaining in this case to be probative of whether Defendant failed to schedule Plaintiff to fill in at the Diamond Bay as often as Plaintiff's white colleagues on account of her race.  Further, unlike the allegations of Diamond Bay sales manipulation, Plaintiff made no mention of these other incidents and failed to identify pertinent witnesses or documentary exhibits in the Joint Final Pretrial Order.

In summary, the Court will deny Defendant's motion to preclude Plaintiff from introducing evidence concerning the alleged manipulation of her sales receipts following her promotion to the Diamond Bay (while making no determination of admissibility pending arguments under Rule 403), but will preclude Plaintiff from testifying about the examples of alleged "ongoing harassment," (Docket Item 60 at 6), discussed above.

## IV.  CONCLUSION

For the reasons explained above, the Court will deny Plaintiff's motion to amend and will grant in part and deny in part Defendant's motions to exclude evidence as set forth in this Opinion.  The accompanying Order will be entered.


**January 20, 2009**                      **s/ Jerome B. Simandle**
Date                                      JEROME B. SIMANDLE
                                          United States District Judge