```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| JANICE GILMORE, | HON. JEROME B. SIMANDLE |
| Plaintiff, | Civil No. 06-3020 (JBS) |
| v. | |
| MACY'S RETAIL HOLDINGS, | **MEMORANDUM OPINION** |
| Defendant. | |

**SIMANDLE**, District Judge:

   This matter is before the Court upon its own motion to consider the impact of the recently enacted Lilly Ledbetter Fair Pay Act of 2009 upon Plaintiff's Title VII claim.  THIS COURT FINDS AS FOLLOWS:

   1.  This is a case of alleged employment discrimination by Defendant, Macy's Retail Holdings, against Plaintiff, Janice Gilmore, which, according to Plaintiff's allegations, violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-2.1, et seq.  Plaintiff is a longtime employee of Defendant's store in Hamilton, New Jersey, and has been employed in the store's Fine Jewelry Department since February 2001. (Gilmore Dep. at 16.)

   2.  Plaintiff filed a charge with the United States Equal Employment Opportunities Commission ("EEOC") on the basis of alleged racial discrimination on July 7, 2005, (id. at 174-75),

and, after the EEOC issued a Dismissal and Notice of Rights informing Plaintiff that the Commission was "unable to conclude" that Defendant had violated Title VII, (Def.'s Br. Ex. F), commenced this action on May 10, 2006 [Docket Item 1]. Plaintiff asserted that Defendant discriminated against her by failing to promote her from the Fine Jewelry Department's Gold Bay[1] to the Diamond Bay, and also asserted a disparate treatment claim premised upon numerous instances in which Defendant had allegedly treated Plaintiff differently from her white colleagues in the Fine Jewelry Department on account of her race.

    3.    In its March 11, 2008 Opinion and Order [Docket Items 40, 41], this Court granted in part and denied in part Defendant's motion for summary judgment. As to Plaintiff's failure-to-promote claim and the vast majority of alleged instances of disparate treatment, the Court entered summary judgment in Defendant's favor, finding that Plaintiff's own evidence failed to support her claims. (Docket Item 40 at 11-23.) However, as to a single aspect of Plaintiff's disparate treatment claim – whether Plaintiff, when she was an associate in the Gold Bay, was denied the opportunity to fill in for absent Diamond Bay associates on account of her race, and was thereby

---

[1] The Fine Jewelry Department at Macy's is divided into three areas, or "bays," each of which contains a separate category of products: the Diamond Bay, the Gold Bay, and the Watch Bay. (Gilmore Dep. at 16.)

deprived the opportunity to earn bonuses on sales of more expensive products – the Court denied Defendant's motion for summary judgment.  (Id. at 24-27.)  The jury trial on the merits of this sole remaining theory of liability (asserted pursuant to Title VII and the NJLAD) commenced on February 2, 2009.

4.   Meanwhile, on January 29, 2009, President Obama signed into law the Lilly Ledbetter Fair Pay Act of 2009 (the "FPA"). The FPA responded to the Supreme Court's decision in Ledbetter v. Goodyear Tire & Rubber Co., 550 U.S. 618, 127 S. Ct. 2162 (2007), in which the Court held, in defining which activities qualify as unlawful employment practices in cases of discrimination with respect to compensation, that

> [t]he EEOC charging period is triggered when a discrete unlawful practice takes place.  A new violation does not occur, and a new charging period does not commence, upon the occurrence of subsequent nondiscriminatory acts that entail adverse effects resulting from the past discrimination.

127 S. Ct. at 2169.

5.   As Congress explained in the FPA, the "Ledbetter decision undermines . . . [statutory protections against discrimination] by unduly restricting the time period in which victims of discrimination can challenge and recover for discriminatory compensation decisions or other practices, contrary to the intent of Congress."  123 Stat 5.  The FPA amends Title VII's provisions in Section 706(e) (42 U.S.C. §

2000e-5(e))[2]  regarding the statutory charging period by introducing the following provisions, which add Section 706(e)(3)(A) & (B):

> (3)(A) For purposes of this section, an unlawful employment practice occurs, with respect to discrimination in compensation in violation of this title, when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice.
>
> (B) In addition to any relief authorized by section 1977A of the Revised Statutes (42 U.S.C. 1981a), liability may accrue and an aggrieved person may obtain relief as provided in subsection (g)(1), including recovery of back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge filing period are similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge.

Id. The FPA "take[s] effect as if enacted on May 28, 2007 and appl[ies] to all claims of discrimination in compensation under title VII of the Civil Rights Act of 1964 (42 U.S.C. 2000e et seq.) . . . that are pending on or after that date." Id. The FPA therefore applies to this case.

    6.  In light of the fact that Congress expressly indicated that the FPA was to apply retroactively, id., the Court has

---

[2] Section 706(e) governs, inter alia, the "[t]ime for filing charges; time for service of notice of charge on respondent; [and] filing of charge by Commission with State or local agency" under Title VII. 42 U.S.C. § 2000e-5(e).

4

considered the impact of the Act upon this case, including its impact upon Plaintiff's remaining Title VII claim.  First, the Court notes that the FPA has no impact upon the Court's prior summary judgment decision – the Court's rulings turned upon the insufficiency of Plaintiff's evidence (and her inability to raise a genuine issue of material fact) as to the majority of her claims, not on the timeliness of her claims or the accrual of the charging period.  Those claims that the Court found were non-viable in its summary judgment Opinion remain non-viable and are not impacted by the FPA's clarification of the EEOC charging period.

    7.  As to Plaintiff's remaining Title VII claim, however, the Act clarifies the potential time period of allegedly unlawful employment practices for which Plaintiff may recover.  In particular, new Section 706(e)(3)(B), as noted above, provides that "liability may accrue and an aggrieved person may obtain relief as provided in subsection (g)(1), including recovery of back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge filing period are similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge."  Id.  The House Report on the FPA explains the purpose of Section 706(e)(3)(B):

5

> This new section clarifies that victims of pay discrimination are entitled to the full back pay amount available – up to two years of back pay as already provided under Section 706(g)(1). This section is added to ensure that back pay in cases such as Ledbetter are not limited to 180 [or 300] days. The statute of limitations period and the back pay recovery period are two separate periods in the Act.

H.R. REP. 110-237, at 19 (2007). Section 3(B), in short, permits a victim of discrimination in compensation who files a timely EEOC charge as to at least one instance of pay discrimination to recover back pay for pay discrimination that occurred during the two years preceding the filing of the charge if such preceding discrimination is "similar or related to" the practice that is the subject of the timely-filed charge.[3]  123 Stat 5.

8. The FPA thus clarifies the time period for which Plaintiff may recover back pay for alleged discrimination in the terms of her compensation. Plaintiff filed her EEOC claim on July 7, 2005, (Gilmore Dep. at 174-75), indicating that back pay may be awarded for discrimination in compensation taking place as

---

[3] As Section 3(A) of the FPA makes clear, an unlawful employment action transpires "when an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice." 123 Stat 5. Under Title VII's 300-day filing requirement, see 42 U.S.C. § 2000e-5(e)(1), one such unlawful employment action must have occurred after September 10, 2004 – 300 days prior to July 7, 2005 filing of Plaintiff's EEOC charge – in order for her Title VII claim to be viable. If the Plaintiff proves that an unlawful employment action occurred within the 300 days prior to July 7, 2005, she may seek recovery of back pay for other similar or related unlawful employment actions occurring back to July 7, 2003.

early as July 7, 2003, so long as such alleged discrimination is "similar or related to unlawful employment practices" at issue here – namely, the allegedly race-based limitation on Plaintiff's ability to fill in for employees in the Diamond Bay. 123 Stat 5.

9. The Title VII amendment in the FPA does not affect Plaintiff's NJLAD claim. The NJLAD applies a separate statute of limitations that is not tied to the filing of a charge, because "[t]he NJLAD does not require exhaustion of administrative remedies, and, instead, permits the plaintiff to select his preferred forum, either in court or before the DCR." Cox v. Scholastic Book Fairs, No. 05-4190, 2006 WL 1228615, at *3 (D.N.J. May 05, 2006) (citing N.J.S.A. 10:5-13). Rather, claims brought pursuant to the NJLAD are subject to a two-year statute of limitations. Montells v. Haynes, 133 N.J. 282, 286 (1993). The Complaint in this action was filed on May 10, 2006, meaning that Plaintiff's NJLAD claim is actionable to the extent that it accrued on or after May 10, 2004.

10. In summary, the Court finds that the recently-enacted FPA applies to this case, but that its impact is limited to Plaintiff's remaining Title VII claim. The FPA does not impact the claims in this case as to which the Court entered summary judgment, as such claims failed due to the insufficiency of Plaintiff's evidence, not due to considerations of timeliness. As to Plaintiff's remaining Title VII claim, the FPA clarifies

7

the time period for which Plaintiff may recover back pay, permitting an award of back pay for "up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge filing period are similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge." 123 Stat 5.  Finally, the FPA does not impact Plaintiff's NJLAD claim, which has a separate statute of limitations.  The accompanying Order clarifying the impact of the FPA upon this case will be entered.


**February 4, 2009**                              **s/ Jerome B. Simandle**
Date                                         JEROME B. SIMANDLE
                                             United States District Judge